UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -X

ENTERTAINMENT BY J&J, INC.,

                Plaintiff,              REPORT AND
                                                      RECOMMENDATION

      - against -

                                                        CV 2001-5292

VICTOR M. MARINES d/b/a La            (ERK) (MDG)
Nueva Cabana Restaurant,

                Defendant.

- - - - - - - - - - - - - - - - - -X

GO, United States Magistrate Judge:

    Plaintiff Entertainment by J&J, Inc. ("J&J" or "plaintiff") brought this action under Title 47 of the United States Code alleging that defendant Victor M. Marines d/b/a La Nueva Cabana Restaurant ("defendant") violated sections 553 and 605 by intercepting and displaying to his patrons, without authorization, plaintiff's otherwise scrambled transmission of a boxing match held on April 7, 2001 ("the match").  Complaint ("Compl.") (ct. doc. 1) at ¶¶ 6, 12-19.

    Defendants failed to appear or otherwise defend this action. Ct. docs. 7, 8.  By order entered on February 11, 2003, the Honorable Edward R. Korman granted default judgment and referred this case to me for a report and recommendation on the issue of damages.[1]  Ct.

---

[1] On December 30, 2002, Judge Korman warned that this case would be dismissed for failure to prosecute if no action was taken
                                                             (continued...)

doc. 8.

## PERTINENT FACTS

The undisputed facts pertinent to determination of this motion are set forth in the Compl.; the August 17, 2001 affidavit of service ("Service Aff.") (ct. doc. 2); the Motion for Default Judgment (the "Motion") (ct. doc. 7); the December 16, 2002 affirmation of Morse Geller ("Aff. for Judgment") attached to the Motion; the March 4, 2003 affidavit of Skip Klauber ("Klauber Aff.") attached to the Motion; the April 30, 2001 affidavit of investigator Peter Manceri ("Manceri Aff.") attached to the Motion; and the March 6, 2003 Affirmation in Support of Request for Attorney's Fees ("Fees Aff.") attached to the Motion. Defendants did not file any opposing papers.

Plaintiff is a corporation organized and existing under the laws of the State of California, with its principal place of business located in Campbell, California. Compl. at ¶ 4. Defendant Victor M. Marines resides in New York and is transacting business as "La Nueva Cabana Restaurant" in Brooklyn, New York. Id. at ¶ 5.

Plaintiff entered into a closed-circuit television licensing

---

[1](...continued)
by any party within thirty days. See ct. doc. 5. Plaintiff filed its Motion for Default Judgment on January 31, 2003. See ct. doc. 7. Before plaintiff's default motion reached Judge Korman's chambers, on February 3, 2003, he issued an order of dismissal without prejudice. See ct. doc. 6. Judge Korman's February 11, 2003 order superseded his February 3, 2003 dismissal order.

agreement with the producers of the championship boxing match between Prince Naseem Hamed and Marco Antonio Barrera to broadcast the match and all undercard bouts on April 7, 2001. Id. at ¶ 6. The transmission of the match was broadcast by satellite uplink and subsequent cable transmission and was electronically coded or "scrambled." Id. at ¶ 11. Plaintiff then retransmitted the signals to subscriber establishments, enabling them to view only those broadcasts for which they had paid. Id. at ¶¶ 12-13, 17. The establishments that were authorized to broadcast the match were given electronic decoding equipment and the satellite coordinates to receive a clear telecast of the match. Id. at ¶ 13. Defendant did not contract with J&J and thus was not authorized to receive and publish the match. Id. at ¶¶ 12, 18. As set forth in his affidavit, Investigator Peter Manceri observed the unauthorized public showing of the match by El Nueva Cabana to approximately 17 patrons. Manceri Aff. at ¶ 3. Manceri entered the establishment at 11:20 p.m. on April 7, 2001 and observed, inter alia, the beginning of the match. Id. at ¶ 4.

Plaintiff served defendant Marines by leaving process with a co-worker at Marine's place of business and mailing a copy to said defendant at this location. See Service Aff. Since New York law permits service upon individuals at their actual place of business, see N.Y. Civil Prac. Law and Rules § 308, I find that service was properly effectuated upon Marines. Since

Marines failed to appear, default is properly entered against him.

Following Marine's failure to answer plaintiff's complaint, plaintiff filed a motion for judgment by default. See ct. doc. 7.

DISCUSSION

I.  Legal Standards Governing Default

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except for those relating to damages. Greyhound Exhibitgroup, Inc. v. E.L.U.L. Reality Corp., 973 F.2d 155, 158 (2d Cir.), cert. denied., 113 S. Ct. 1049 (1993); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). A default also effectively constitutes an admission that damages were proximately caused by the defaulting party's conduct: that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged. Id. at 69-70. The movant need prove "only that the compensation sought relate to the damages that naturally flow from the injuries pleaded." Greyhound, 973 F.2d at 159.

The court must ensure that there is a reasonable basis for the damages specified in a default judgment. Actual damages or statutory damages may be assessed. In determining damages not susceptible to simple mathematical calculation, Fed. R. Civ. P. 55(b)(2) gives a court the discretion to determine whether an

evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence. Action S.A. v. Marc Rich and Co., Inc., 951 F.2d 504, 508 (2d Cir.), cert. denied, 503 U.S. 1006 (1992) (quoting Fustok v. Conticommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)). The moving party is entitled to all reasonable inferences from the evidence it offers. Au Bon Pain, 653 F.2d at 65 (citing Trans World Airlines, Inc. v. Hughes, 308 F. Supp. 679, 683 (2d Cir. 1969)).

## II. Determination of Damages

### A. Liability

Both sections 553 and 605 of Title 47 prohibit the unauthorized reception of cable programming. Section 553(a)(1) specifically applies only to cable transmissions and provides that, "[n]o person shall intercept or receive ... or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." Section 605(a) generally provides that, "[n]o person not being authorized by the sender shall intercept any radio communication ... or assist in receiving any interstate or foreign communication by radio and use such communication for his own benefit or the benefit of another not entitled thereto."

The Second Circuit in Int'l Cablevision, Inc. v. Sykes, 75 F.3d 123, 130 (2nd Cir.), cert. denied sub nom Noel v.

Int'l Cablevision, Inc., 519 U.S. 929 (1996) ("Sykes II"), held that section 605 applies to "the interception of cable-borne, as well as over-the-air, pay television" where cable-borne transmissions originate as satellite transmissions. The Sykes II court also recognized that sections 553 and 605 are not mutually exclusive and when certain television programming is transmitted or intercepted over both cable and satellite mediums, both statutes apply. Id.

Plaintiff's submissions establish that defendant Marines violated sections 553 and 605 of Title 47 by intercepting and receiving the match without authorization. Compl. at ¶¶ 12, 14-18. Plaintiff is in the business of distributing the television broadcasts of sporting events and, in particular, had the right to distribute the match and all undercard bouts in the State of New York on April 7, 1999. Id. at ¶¶ 6-10. Investigator Manceri observed the match being displayed at La Nueva Cabana Restaurant, a business operated by Marines without having first contracted with plaintiff to do so. Manceri Aff. at ¶ 3. Marines is named in the caption of the complaint as doing business as La Nueva Cabana Restaurant. Although an action cannot be maintained against a business operating under a trade name, it may be maintained against an individual doing business under a trade name. See Ragin v. Harry Mack Lowe Real Estate Co., Inc., 126 F.R.D. 475, 480 (S.D.N.Y. 1989); Provosty v. Lydia E. Hall Hosp., 91 A.D.2d 658, 659, 457 N.Y.S.2d 106 (2d Dep't 1982), aff'd, 59

N.Y.2d 812 (1983); <u>Marder v. Betty's Beauty Shoppe</u>, 38 Misc.2d 687, 687-88, 239 N.Y.S.2d 923, 924 (2d Dep't 1962). Consequently, this Court finds that defendant Marine's unlicensed reception and exhibition of the transmissions violated sections 553 and 605 of Title 47.

    B.   <u>Damages</u>

Plaintiff requests damages pursuant to both sections 605 and 553. <u>See</u> Aff. for Judgment at ¶ 7; Plaintiff's Memorandum of Law in Support of Request for Judgment by Default ("Pl.'s Mem.") (attached to the Motion) at 7-19.

Sections 553 and 605 allow prevailing plaintiffs to elect to recover either actual damages and lost profits, or statutory damages. <u>See</u> 47 U.S.C. § 553(c)(3)(A); 47 U.S.C. § 605(e)(3)(C)(I). Where a defendant is liable under both sections, plaintiff is entitled to have damages awarded only under section 605 because it provides greater recovery than does section 553. <u>See</u> <u>Sykes II</u>, 75 F.3d at 127; <u>Entm't by J&J, Inc. v. Mama Zee Rest. & Catering Servs.</u>, No. 01-CV-3945, 2002 WL 2022522, at *3 (E.D.N.Y. May 21, 2002) (recovery under both sections 605 and 553 is impermissible). Section 605(e)(3)(C)(i)(II) authorizes statutory damages of no less than $1,000 and no more than $10,000 for "each violation" of section 605(a). In addition, section 605(e)(3)(C)(ii) vests the court with the discretion to increase the award of damages where "the court finds that the violation was committed willfully and for

the purposes of direct or indirect commercial advantage or private financial gain."  The court is authorized to award enhanced damages of up to $100,000 for each violation of willfulness.  Section 605(e)(3)(C)(i)(II) vests the court with the discretion to determine the amount of statutory damages, authorizing the court to award an amount "as the court considers just."  See HBO v. Champs of New Haven, Inc., 837 F. Supp. 480, 484 (D. Conn. 1993); see also Joe Hand Promotions, Inc. v. Nekos, 18 F. Supp. 2d 214, 217 (N.D.N.Y. 1998).

In exercising such discretion, courts should be mindful of the difficulty in detecting such violations and the widespread problem of piracy.  See Cablevision Sys. New York City Corp. v. Faschitti, No. 94 Civ. 6830 (DC), 1996 WL 48689, at *2 (S.D.N.Y. Feb. 7, 1996); see also Sykes II, 75 F.3d at 132 (quoting legislative history).  The court should therefore grant damages in an amount which achieves the deterrent purposes of the statute.  See Cablevision Sys. New York City Corp. v. Lokshin, 980 F. Supp. 107, 113 (E.D.N.Y. 1997).

Plaintiff seeks to recover statutory damages in the amount of $20,000.00 and enhanced damages of $150,000.00 for willful violation.  See Aff. for Judgment at ¶ 7; Pl.'s Mem. at 15, 19.  Some courts, when presented with sufficient evidence indicating the number of patrons present at the time of the unauthorized programming, have employed a formula that multiplies that number by a dollar amount, usually based on the customary charge for the

event in question.  See, e.g., Mama Zee, 2002 WL 2022522, at *10 (awarding $50.00 per patron); Time Warner Cable of New York City v. Googies Luncheonette, Inc., 77 F. Supp. 2d 485, 489 (S.D.N.Y. 1999) (same); Time Warner Cable of New York v. Taco Rapido Rest., 988 F. Supp. 107, 111 (E.D.N.Y. 1997) (same); Cablevision Sys. Corp. v. 45 Midland Enters., Inc., 858 F. Supp. 42, 45 (S.D.N.Y. 1994) (same).  Similarly, a number of judges in this district have awarded damages based on the number of patrons or the capacity of an establishment multiplied by the residential fee for a pay-per-view broadcast.  See, e.g., Garden City Boxing Club, Inc. v. Rosado, No. CV 05-1037, 2005 WL 3018704, at *3 (E.D.N.Y. Oct. 6, 2005) (recommending statutory damage award of $989.10 based on a $54.95 residential rate for each of the 19 patrons observed in the establishment); Garden City Boxing Club, Inc. v. Bello, No. CV-05-1300, 2005 WL 2496062, at *3 (E.D.N.Y. Sept. 20, 2005) (recommending statutory damages based on same $54.95 residential rate for each of the 40 patrons who could have viewed the prize fight based on the establishment's capacity). Courts using this approach reason that this residential rate is the amount each patron would have otherwise paid to view the boxing match from home had he or she not had access to a broadcast at the establishment at issue.  See Bello, 2005 WL 2496062, at *3.  Others have simply assessed a flat damage amount per violation.  See Garden City Boxing Club, Inc. v. Ayisah, 02 Civ. 6673, 2004 U.S. Dist. LEXIS 7867 (S.D.N.Y. Apr. 28, 2004)

(awarding $3,000 statutory damages and $5,000 enhanced damages for one-time exhibit of boxing match to 60 customers); Joe Hand Promotions, Inc. v. Hernandez, No. 03 Civ. 6132, 2004 U.S. Dist. LEXIS 12159 (S.D.N.Y. June 30, 2004) (awarding $1,000 statutory damages and $1,500 enhanced damages for one-time exhibits of boxing match to about twenty customers); Kingston Pay-Per-View Ltd. v. Jasper Grocery, 152 F. Supp.2d 438 (S.D.N.Y. 2001) (awarding a flat rate of $5,000).

Plaintiff asserts that there are a number of components to the pecuniary loss suffered here, including lost sublicense fees, lost admission charges, and loss of good will. Here, plaintiff not only lost the sublicense fee that it would have been entitled to charge had the defendant entered into an agreement to broadcast the match, but also the potential admission fees for at least seventeen (17) patrons present during the unauthorized broadcast. In addition, plaintiff argues that theft of its services deprives plaintiff of its good will, reputation, and business investment by raising costs to its paying customers and deterring potential paying customers from seeking proper authorization from plaintiff to televise plaintiff's programming.

Plaintiff has submitted sufficient evidence of the number of patrons (17) present at La Nueva Cabana Restaurant during the illegal broadcast. Manceri Aff. at ¶ 3. However, if the Court were to apply the formula used by other courts in comparable cases, basing the award of damages on $50 per patron, then the

amount of damages would be $850, less than the $1,000 minimum amount of authorized statutory damages. Moreover, that formula has been used in cases filed more than ten years ago. Thus, I recommend that plaintiff be awarded statutory damages based on $100 per patron in the amount of $1,700 under section 605 against defendant Marines. See Entm't by J&J Inc. v. Miraldo Rest., Inc., No. 01 CV 10832, 2003 U.S. Dist. LEXIS 11361, at *11 (S.D.N.Y. Apr. 23, 2003).

Further, I recommend that the Court award enhanced damages against defendant Marines. Defendants who intercept signals and broadcast programming without authorization "in a place of business where certain events are shown to the public" are generally held to have acted willfully and for purposes of commercial advantage. American Cablevision of Queens v. McGinn, 817 F. Supp. 317, 320 (E.D.N.Y. 1993) (citing Cablevision Sys. Corp. v. Maxie's North Shore Deli Corp., No. CIV.A.88-2834, 1991 WL 58350 (E.D.N.Y. 1991)).

The undisputed facts presented by plaintiff in its complaint and the supporting affidavits clearly establish that La Nueva Cabana Restaurant is a commercial establishment that publicly displayed plaintiff's programs to patrons. Plaintiff's submissions support the inference that on April 7, 2001, La Nueva Cabana Restaurant's business increased as a result of displaying the match. Marines may likewise be presumed to have shown the April 7, 2001 match for purposes of commercial gain. Thus, I

find that defendant Marines's actions were willful violations of section 605.

In order to deter defendant Marines from further violations, I recommend that this court award enhanced damages under section 605 (e)(3)(C)(ii) equal to three times the amount of damages awarded under section 605(e)(3)(C)(I). See, e.g., Kingvision Pay-Per-View, Ltd. v. Body Shop, No. 00 CIV. 1089, 2002 WL 393091, at *4 (S.D.N.Y. Mar. 13, 2002) (awarding $10,000 in enhanced damages against a bar which broadcast a boxing match without authorization); Joe Hand Promotions, Inc. v. West, No. CIV.A.99-0983E(M), 2000 WL 1610666, at *2 (W.D.N.Y. Oct. 25, 2000) (where no special circumstances are shown, a trebling of damages is a "reasonable deterrent against future violations") (quoting Goodies Luncheonette, Inc., 77 F. Supp. 2d at 490-91). In this case, I recommend award of enhanced damages of $5,100.

C. Attorney's Fees and Costs

Plaintiff also seeks to recover its attorney's fees and costs. Title 47 U.S.C. § 605(e)(3)(B)(iii) mandates that reasonable attorney's fees and costs be awarded to a prevailing aggrieved party. Int'l Cablevision, Inc. v. Sykes, 997 F.2d 998, 1009 (2d Cir. 1993)("Sykes I"). The standard method for determining the amount of reasonable attorney's fees is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," or the lodestar. Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S. Ct. 1933, 1940 (1983);

Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1058-59 (2d Cir. 1989), cert. denied, 496 U.S. 905 (1990).

In reviewing a fee application, the district court must examine the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case. See Lunday v. City of Albany, 42 F.3d 131, 133 (2d Cir. 1994); DiFilippo v. Morizio, 759 F.2d 231, 235 (2d Cir. 1985). If any expenditure of time was unreasonable, the court should exclude these hours from the lodestar calculation. See Hensley, 461 U.S. at 434; Lunday, 42 F.3d at 133. The court should thus exclude "excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999). A party seeking attorney's fees bears the burden of supporting its claim of hours expended by accurate, detailed and contemporaneous time records. New York State Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983).

The reasonable hourly rates should be based on "the prevailing marketplace rates in the community for similar services by a lawyer of reasonably comparable skill, experience, and reputation." Cruz v. Local Union No. 3, 34 F.3d 1148, 1159 (2d Cir. 1994). Determination of the prevailing market rates may be based on evidence presented or a judge's own knowledge of hourly rates charged in the community. Chambless, 885 F.2d at

1059. The Court in Rotella found that "the prevalent market rate in this district is in the range of $200 to $250 for partners and between $100 and $200 for junior and senior associates." Rotella v. Bd. of Educ. of City of New York, No. 01 CIV. 0434, 2002 WL 59106, at *2-*3 (E.D.N.Y. Jan. 17, 2002) (citations omitted) (finding that rate of lead counsel in a small firm of $225 per hour and rates of $135 and $100 per hour for junior counsel were reasonable); see also SEC v. Goren, 272 F. Supp. 2d 202, 207 (E.D.N.Y. 2003).

Although plaintiff's counsel notes that he bills the plaintiff on a contingency basis, see Fees Aff. at ¶ 3, he seeks to recover $3,224.25 in attorney's fees, based on a rate of $225.00 per hour for 14.33 hours of work. Fees Aff. at ¶ 4.[2] Based on my familiarity with similar cases, I find that the number of hours claimed is excessive. See DIRECTV, Inc. v. Hamilton, 215 F.R.D. 460, 463 (S.D.N.Y. 2003) (rejecting attorney fee request because "these types of cases are routine, straightforward and do not require extensive research"). The time sheets submitted reflect time spent on three separate dates: 5.33 hours expended on July 25, 2001 for "intake, review of file, initial letter, drafting of summons and complaint;" 3.25 hours expended on December 16, 2002 for the "drafting of default

---

[2] Although Pl.'s Mem. states that the amount of attorneys' fees and costs amount to $4,084.25, see Pl.'s Mem. at 20, that is contrary to the Fees Aff. and there is no support for that proposition in any of the submissions.

judgment and supporting documents;" and 5.75 hours expended on March 6, 2003 for "drafting of default documents . . . ." See time sheets attached to Fees Aff. Since plaintiff's counsel submitted nearly identical default judgment papers in January 2003 and March 2003, I recommend rejecting the request for 5.75 hours expended in March 2003. However, I find the rate sought by plaintiff to be reasonable based on my knowledge of prevailing rates for such matters in New York. See Rotella, 2002 WL 59106, at *2-3. Therefore, I recommend that plaintiff be awarded $1,930.50 in attorneys' fees based on 8.58 hours expended.

Plaintiff's counsel also seeks reimbursement of $185.00 in costs incurred but does not explain how the costs were incurred. Fees Aff. at ¶ 4. Nevertheless, since the filing fee and service of process fee pertaining to this matter would have cost at least that amount, I recommend that the Court award plaintiff costs of $185.00.

### D. Pre-Judgment Interest

Finally, plaintiff seeks pre-judgment interest. See Aff. for Judgment at ¶ 7. However, there is no statute authorizing award of pre-judgment interest for violations of Sections 553 and 605. The Second Circuit has recognized that pre-judgment interest may be permitted in the absence of express statutory authorization "when the awards were fair, equitable and necessary to compensate the wronged party fully." Wickham Contracting Co. v. Local Union No. 3, IBEW, 955 F.2d 831, 836 (2d Cir.), cert.

denied, 506 U.S. 946 (1992). Such a discretionary award is normally reserved for "exceptional" cases. Am. Honda Motor Co., Inc. v. Two Wheel Corp., 918 F.2d 1060, 1064 (2d Cir. 1990). The Court finds that since the award of statutory damages and enhanced damages recommended here are not only sufficient to make the plaintiff whole, but are in part punitive, I see no reason for an award of interest. See Wickham, 955 F.2d at 835 ("prejudgment interest is improper where the statute itself already provides for full compensatory or punitive damages"); see also Miraldo Rest., 2003 U.S. Dist. LEXIS 11361, at *16.

Accordingly, this Court respectfully recommends that plaintiff's request for an award of prejudgment interest be denied.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that this Court award plaintiff $6,800.00 in statutory damages plus $2,115.50 in attorney's fees and costs, for a total of $8,915.50 against defendant Marines.

Copies of this Report and Recommendation will be sent by overnight mail or electronically to the parties on this date. Any objections to the recommendations made in this Report and Recommendation must be filed with the Clerk of the Court with a copy to the undersigned and the Honorable Edward R. Korman by November 17, 2006. Failure to file timely objections may waive

the right to appeal.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); <u>Small v. Secretary of Health & Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989).

    **SO ORDERED.**

Dated:    Brooklyn, New York
           October 26, 2006

                                        /s/
                                    MARILYN D. GO
                                    UNITED STATES MAGISTRATE JUDGE